UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JUAN ESPINOZA MARTINEZ, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> SAM OLSEN, ) <br> KRISTI NOEM, ) <br> PAMELA BONDI, ) <br> TODD LYONS, ) <br> LINDA SMALLWOOD, ) <br> ) <br> Respondents. ) | No. 2:26-cv-00074-JPH-MJD |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Juan Espinoza Martinez is a noncitizen who was arrested by U.S. Immigration and Customs Enforcement ("ICE") agents on January 22, 2026. He is detained at the Clay County Jail in Brazil, Indiana, while his removal proceeding—sometimes also referred to as a deportation proceeding—is pending. On February 2, 2026, Mr. Espinoza Martinez filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody or alternatively a hearing where an Immigration Judge could consider the specific facts and circumstances of his situation, determine whether he presents a flight risk or danger to the community, and decide whether he will be released on bond or held in detention until the removal proceeding is completed. For the reasons explained below, the Court finds that Mr. Espinoza Martinez's current detention is unlawful, and he is entitled to an individualized bond hearing. The Court therefore **grants the petition to the extent that no later than 5:00 p.m. on**

1

**February 11, 2026**, Respondents must either: (1) give Mr. Espinoza Martinez an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a); or (2) release him from custody, under reasonable conditions of supervision.

## I. Background Facts

Juan Espinoza Martinez is a 37 year-old citizen of Mexico who entered the United States as a minor over 30 years ago without inspection or lawful admission. Dkt. 1 at 5. He previously had an approved Deferred Action for Childhood Arrivals, which expired in 2021. Dkt. 11-1 at 8.

On October 6, 2025, Mr. Espinoza Martinez was arrested by Homeland Security Investigations officers in connection with criminal charges filed against him for Use of Interstate Commerce Facilities in the Commission of a Murder for Hire. *Id.* He was detained until his acquittal on January 22, 2026. *Id.*

The next day he was detained by ICE officers, arrested pursuant to a Warrant for Arrest (Form I-200), and served with a Notice to Appear (Form I-862), which initiated removal (deportation) proceedings against him. *Id.* at 2-8. This proceeding remains pending, and Mr. Espinoza Martinez is scheduled for a hearing before an Immigration Judge on February 12, 2026. *Id.* at 2.

The Notice to Appear charges Mr. Espinoza Martinez with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i)] as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or

2

place other than as designated by the Attorney General." *Id.* at 5. The "arriving alien" checkbox is unmarked. *Id.* at 2.

Mr. Espinoza Martinez has not moved for or been given a custody redetermination hearing. Dkt. 1 at 3.

The Respondents in this case are officials of the United States Department of Justice, Department of Homeland Security, and Immigration and Customs Enforcement, and an official from the Clay County, Indiana, Detention Center where Mr. Espinoza Martinez is detained. Dkt. 1 at 4-5.

## II.     Discussion

Mr. Espinoza Martinez argues that his detention violates the Immigration and Nationality Act ("INA") (Count I) and the Due Process Clause of the Fifth Amendment to the United States Constitution (Count II). Dkt. 1 at 21-22. Respondents argue that Mr. Espinoza Martinez is subject to mandatory detention and therefore lawfully detained under the INA pursuant to 8 U.S.C. § 1225(b)(2)(A); that, in the alternative, he is lawfully detained under the INA pursuant to 8 U.S.C. § 1226(a) because he will have the opportunity to receive a hearing; and that his detention does not violate the United States Constitution. Dkt. 11.

The Court finds that § 1225(b)(2)(A) does not apply here and that Mr. Espinoza Martinez's detention is governed by § 1226(a). He is therefore entitled to a bond hearing where an immigration judge must make an individualized determination as to whether Mr. Espinoza Martinez should be released on bond

or detained during his removal proceedings. Mr. Espinoza Martinez has not received an individualized bond hearing, so his current detention is unlawful.

### A. Exhaustion

Respondents argue that Mr. Espinoza Martinez's claims are premature because he has not exhausted his administrative remedies. Dkt. 11 at 14. Mr. Espinoza Martinez argues that it is futile to attempt to exhaust his administrative remedies because the Bureau of Immigration Appeals' ("BIA") decision *Matter of Yajure Hurtado* precludes the possibility of being released on bond. Dkt. 12 at 9-10.

Respondents do not cite a statute that requires Mr. Espinoza Martinez to request a bond hearing before seeking habeas relief. In the absence of a statutory requirement, "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). In similar circumstances, other district courts have determined that the petitioner was not required to exhaust administrative remedies by seeking a bond hearing before an immigration judge because doing so would be futile given the holding of the Board of Immigration Appeals' holding in *Matter of Yajure Hurtado*. *See Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025) ("Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that [Petitioner] is *statutorily precluded* from obtaining the relief he seeks. The Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change its position [once] the BIA has predetermined the statutory issue.") (internal quotes and citations

4

omitted); *see also Ceballos Ortiz v. Olson, et al.*, 2:25-cv-00548-MPB-MJD, dkt. 18 at 2-3, 6-9 (S.D. Ind. Nov. 19, 2025) (finding exhaustion would be futile, proceeding to merits, and ordering that petitioner be provided a bond hearing).

The Court finds the reasoning applied in *Valencia* and *Ceballos Ortiz* persuasive and concludes that Mr. Espinoza Martinez was not required to exhaust administrative remedies because doing so would be futile.

### B. 8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

Section 1226(a) provides:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond . . . ; or

5

      (B) conditional parole . . ..

8 U.S.C. § 1226(a).

An immigration officer then makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

### C. Mr. Espinoza Martinez Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)

Mr. Espinoza Martinez argues that under the text, framework, and prior usage of these statutes, he is not subject to mandatory detention under § 1225(b)(2)(A) and can only be detained under § 1226(a), which requires that he receive a bond hearing. Respondents argue that § 1225(b)(2)(A) applies to Mr. Espinoza Martinez because he is an unadmitted alien.

#### 1. Statutory Text

It's undisputed that Mr. Espinoza Martinez is an "alien" who is "present in the United States" and "has not been admitted", so he is an "applicant for admission" under § 1225(a)(1). And because Mr. Espinoza Martinez has been served with a Notice to Appear, it is evident that he is not "clearly and beyond a doubt entitled to be admitted." Respondents have not, however, shown that Mr.

7

Espinoza Martinez fits the third criteria in § 1225(b)(2)(A), that is, he is "seeking admission" into the United States. Respondents' only argument in this regard is a conclusory statement that he is "a noncitizen who DHS has determined to be seeking admission." *See* dkt. 11 at 11.[1]

As the Seventh Circuit recently explained, "seeking admission" under § 1225(b)(2)(A) cannot be read as synonymous with "applicant for admission." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (citing *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)) ("[E]very clause and word of a statute should have meaning.")).[2] "If an interpretation of one provision 'would render another provision superfluous, courts presume that interpretation is incorrect.'" *Id.* (quoting *Bilski v. Kappos*, 561 U.S. 593, 607–08, 130 (2010)). "[T]his presumption is 'strongest when an interpretation would render superfluous another part of the same statutory scheme,' as would be the case here." *Id.* (quoting *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013)). Furthermore,

---

[1] Respondents cite recent district court decisions finding that § 1225(b)(2)(A) applies to all unadmitted aliens because they are "applicants for admission", but do not explain whether Mr. Espinoza Martinez fits the "seeking admission" criteria. *See* dkt. 11 at 11-12.

[2] The Court cites *Castañon-Nava* as persuasive precedent. *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("[a]t a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' — F.4th —, 2025 WL 3552514, at *8. But the statutory-interpretation issue that the opinion resolved was one purely of *law*, and any adjustment to the *factual* record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.").

>it is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an "applicant for admission" to "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). It could easily have included noncitizens who are "seeking admission" within the definition but elected not to do so.

*Id.*

Unlike "applicant for admission," "an alien seeking admission" is not defined within the statute. Therefore, the Court gives the text its plain meaning. *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 85 (2018) (directing courts, in the absence of a statutory definition, to be guided by the plain meaning of the text). The plain meaning of "seeking admission" did not apply to Mr. Espinoza Martinez when immigration authorities arrested him in January 2026. *See Cazarez-Gonzales v. Olson*, No. 2:25-CV-590 (S.D. Ind. Dec. 5, 2025), dkt. 19 at 8 (collecting cases). "[S]eeking admission" is written in present-tense active language. *See United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes."). As this Court explained, "'seeking' means 'asking for' or 'trying to acquire or gain' and implies some kind of affirmative action on the part of the applicant." *Alejandro v. Olson*, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *see also Beltran Barrera v. Tindall*, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (rejecting the respondents' interpretation of section 1225(b)(2) to cover all aliens who are present without being admitted because "[t]he term 'seeking' 'implies action'" and "those who have been present in the country for years are not actively 'seeking admission.'"); *Rusu v. Noem*, 2025 WL 3240911, at *5 (N.D. Ill. Nov. 20, 2025) ("Noncitizens who are

9

just 'present' in the country—who have been here for years and never proceeded to obtain any form of citizenship (e.g. asylum, permanent residency, refugee status, visas, etc.)—are not 'seeking' admission.").

The facts demonstrate that here, Mr. Espinoza Martinez is not "seeking admission." He entered the United States over thirty years ago as a minor child and has lived here ever since. If anything, Mr. Espinoza Martinez's pending application demonstrates that he is "seeking to remain in the United States" not seeking admission. *Alejandro*, 2025 WL 2896348, at *7 ("[Petitioner] is not actively 'seeking' 'lawful entry' because he entered the United States over 20 years ago."). In their response, Respondents tacitly admit as much. Dkt. 11 at 8 ("[H]e has been here for several years and appears to be expressing a desire to remain in the United States indefinitely."). Also, Respondents' treatment of Mr. Espinoza Martinez—arresting him pursuant to a Warrant for Arrest (Form I-200) and serving him with a Notice to Appear (Form I-862) initiating removal (deportation) proceedings against him—is consistent with § 1226(a).

In sum, the Court finds that Mr. Espinoza Martinez is not "seeking admission", which supports the conclusion that § 1225(b)(2)(a) does not apply.

### 2. Statutory Context and Framework

Respondents' interpretation of § 1225(b)(2)(A) does not make sense when read, as it must be, in the context of the rest of § 1225 and the INA's statutory framework. "[S]tatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory

scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (Our duty, after all, is "to construe statutes, not isolated provisions.") (internal quotation omitted).

Considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" aliens attempting to enter the United States at a border or a designated port of entry. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and it repeatedly refers to "arriving" aliens throughout. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute explicitly carves out exceptions for "crewm[e]n" and "stowaway[s]" in § 1225(b)(2)(B), which further demonstrates that § 1225 applies broadly to "arriving" noncitizens—not just § 1225(b)(1). In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports.

As Respondents concede, § 1225 as a whole governs "inspection." Dkt. 11 at 8. Though not defined in the statute, regulations for "Inspection of Persons Applying for Admission" characterize inspection as occurring at or near the U.S.-Mexico or U.S. Canada border or a port of entry. *See* 8 C.F.R. § 235.1(f) *et seq.* (referring to aliens seeking admission at a "port-of-entry;" inspecting aliens who

11

have been "brought to the United States . . . after having been interdicted in international or United States waters;" and repeatedly referring to "land border" and "land border port-of-entry" throughout). Here, as explained above, Mr. Espinoza Martinez was not subject to inspection or screening in connection with his recent arrest.

Respondents' interpretation also disregards the relationship between § 1225 and § 1226 within the INA. While § 1225 focuses on "inspection" of "arriving aliens," § 1226 pertains to the "[a]pprehension and detention of aliens." The plain language here suggests that § 1226—not § 1225—applies to Mr. Espinoza Martinez because he is an "alien," who was "apprehended" and "detained" after a warrant was issued for his arrest. The fact that these two classes of noncitizens would be treated differently makes sense within broader immigration law. As the Seventh Circuit explained, "the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law. Indeed, '[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.'" *Castañon-Nava*, 161 F.th at 1061 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)); *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.").

In sum, the text and context of the applicable statutes demonstrate that § 1225(b)(2)(A) does not apply here.

### 3. Prior Agency Usage

Since July 2025, Respondents have taken the position that § 1225(b)(2) applies in the circumstances presented here, *i.e.*, a noncitizen who entered the United States without inspection and has been in the United States for years. Section 1226(a)'s prior usage and interpretation, however, further demonstrates that § 1226(a), not § 1225(b)(2), applies here. After Congress passed the current detention framework as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), the Executive Office for Immigration Review ("EOIR") drafted regulations explaining that, generally, people who entered the country without inspection are subject to detention under § 1226(a). *See* 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination.").

Indeed, for years the government applied section 1226(a) to unadmitted noncitizens, such as Mr. Espinoza Martinez, who were arrested in the interior of the country after already entering without inspection. *See Matter of Hurtado*, 29 I&N Dec. 216 n.6. ("We acknowledge that for years Immigration Judges have conducted [section 1226(a)] bond hearings for aliens who entered the United States without inspection."). While an agency's interpretation of a statute is not dispositive, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), the

13

statute's prior usage and history may be considered along with the plain text of the statute, and the statutory context. Here, that weighs in favor of finding that § 1226(a), not § 1225(b)(2), applies to Mr. Espinoza Martinez.

### D. Opportunity for Bond Hearing

Respondents argue that even if § 1226(a) applies here rather than § 1225(b)(2), Mr. Espinoza Martinez is being lawfully detained "because he has received a hearing before an Immigration Judge." Dkt. 11 at 12. Respondents therefore argue that this Court does not have jurisdiction over this matter due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* (quoting 8 U.S.C. § 1226(e)).

But Mr. Espinoza Martinez has not had a *bond hearing*. And while Mr. Espinoza is scheduled to appear before an immigration judge on February 9, *see* dkt. 11-1 at 1, Respondents argue that Mr. Espinoza Martinez is ineligible for a bond hearing. *See* dkt. 11 at 8-9. Because an immigration judge has not "denied" or "revoked" bond, § 1226(e) does not preclude the Court's review and adjudication of this Petition.

Mr. Espinoza Martinez has not been provided an individualized bond hearing where an Immigration Judge would evaluate the specific facts and circumstances of this case and decide whether Mr. Espinoza Martinez is a flight

risk or danger to the community, and correspondingly, whether he is entitled to release on bond. Thus, his current detention pursuant to § 1226(a) is unlawful.[3]

### III.    Scope of Relief

Mr. Espinoza Martinez is entitled to habeas relief because as explained above, his continued detention without a bond hearing violates ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Mr. Espinoza Martinez requests immediate release from custody or, in the alternative, an individualized bond hearing. Dkt. 1 at 22. Immediate release is the customary remedy in habeas proceedings. *See Dep't of Homeland Security v. Thursaissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, the Court finds that it would not be in the interests of justice to order Mr. Espinoza Martinez's immediate release and instead orders Respondents to provide him an individualized bond hearing as required by § 1226(a) and its regulations.

### IV.    Conclusion

The Court grants the petition to the extent that no later than **5:00 p.m. on February 11, 2026**, Respondents must either: (1) provide Mr. Espinoza Martinez with an individualized bond hearing before an immigration judge

---

[3] Because the Court finds that Mr. Espinoza Martinez's detention is unlawful for the reasons explained above, it does not consider the other arguments set forth in his Petition.

15

pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) release Mr. Espinoza Martinez from custody, under reasonable conditions of supervision. No later than **12:00 p.m. on February 13, 2026**, Respondents must file documentation certifying that they have provided Mr. Espinoza Martinez with a bond hearing, including apprising the Court of the results of the hearing. If Respondents release Mr. Espinoza Martinez, then they must file documentation certifying his release. The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Date: 2/6/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel